413 So.2d 1346 (1982)
In the Matter of the Abandonment of Stephen Boyd HARRELL.
No. 15083.
Court of Appeal of Louisiana, First Circuit.
April 13, 1982.
J. Glenn Dupree, Baton Rouge, for plaintiff-appellant John Anthony Ashford and Connie Dubois Ashford.
Donald R. Weber, Baton Rouge, for defendant-appellee Charles Aubrey Harrell.
Before LOTTINGER, EDWARDS and SHORTESS, JJ.
LOTTINGER, Judge.
In separate proceedings, consolidated in the trial court, Mrs. Connie Dubois Ashford, the natural mother of Stephen Boyd Harrell, seeks to have the child declared abandoned by his father, Charles Aubrey Harrell; and Mrs. Ashford and her present husband, John Anthony Ashford, seek the adoption of Stephen by the second husband. The natural father and first husband of Mrs. Ashford, Charles Harrell, opposes both proceedings. From a judgment dismissing both petitions, John Anthony and Connie Dubois Ashford have appealed.

FACTS
Connie Dubois and Charles Harrell were married in July of 1973, commenced living separate and apart in January of 1974, and were legally separated on June 28, 1974. Stephen Boyd Harrell was born on July 25, 1974. On November 24, 1975, Charles Harrell obtained a default judgment of divorce from his wife. The divorce judgment awarded the mother the permanent care, custody and control of the minor, Stephen. The father did not seek visitation privileges *1347 with the child, nor did he offer to pay any child support, thus the divorce judgment is silent as to support and visitation.
On December 16, 1977, Connie Dubois married John Anthony Ashford, and they have lived together continuously, with Stephen, since that marriage.
Since the separation in June of 1974, Charles Harrell has not given any financial help to Connie, nor since the birth of Stephen has he given financial help for the support of his son. He has seen the child only twice since the birth, once when Stephen was six months old, and again when he was eight months.
The marriage of Connie and Charles was apparently rocky from the beginning, and a great amount of animosity developed between Charles and his in-laws. In his written reasons for judgment, the trial judge found as fact that the mother took "the position that she would not allow visitation in return for support," and that "she admitted never demanding support but always using the fact of non-support as an excuse to deny visitation." The trial judge concluded that petitioners had not borne the burden of proving that consent of the father is not required or that the child was abandoned by its father.
In appealing petitioners contend the trial judge erred in holding (1) that petitioners had not borne the burden of proof in the abandonment proceeding, (2) that petitioners had not borne the burden of proving that the father's consent was not required in the adoption proceeding, and (3) that the natural father had just cause for not visiting, communicating, supporting or attempting to visit, communicate or support his child.

ABANDONMENT
The abandonment proceeding was instituted under La.R.S. 9:403.[1] Just *1348 recently this court in In Re Allain, 407 So.2d 767 (La.App. 1st Cir. 1981) held that La.R.S. 9:403 only applies to abandonment actions initiated by an agency or officer of the court, and not by a private individual. Thus, for whatever reasons, the trial judge was correct in dismissing the petition in the abandonment proceeding.

ADOPTION
La.R.S. 9:422.1 provides:
"If the spouse of the petitioner is the legitimate parent of the child or if the petitioner is the grandparent or grandparents of the child then the consent of the other legitimate parent is not necessary when the spouse of the petitioner or the grandparent or grandparents or the mother or the father have been granted custody of the child by a court of competent jurisdiction, and if any one of the following conditions exist:
(1) The other legitimate parent has refused or failed to comply with a court order of support for a period of one year.
(2) The other legitimate parent is a nonresident of this state and has failed to support the child for a period of one year after judgment awarding custody to the mother or father or grandparent or grandparents.
(3) The other legitimate parent has refused or failed to visit, communicate, or attempt to communicate with the child, without just cause, for a period of two years."
Stephen's mother was granted custody in the divorce decree, thus the initial prerequisite has been met. It is only then necessary for petitioners to prove one of the three enumerated conditions mentioned in La.R.S. 9:422.1. The obvious condition that petitioners attempted to prove is Number 3, "the other legitimate parent has refused or failed to visit, communicate or attempt to communicate with the child, without just cause, for a period of two years." The trial judge found that Stephen's natural father had, "just cause," thus disallowing the use of La.R.S. 9:422.1 dispensing with the consent of the father.
In addition to the facts recited above, the father of the child discussed visitation with the boy's mother several times. After listening to the natural mother and father of Stephen testify, the trial judge was obviously impressed that Stephen's father wanted to be able to see his son, though he never demanded such, and that the mother did not want him to visit with his son. We agree with the trial judge in his conclusion that petitioners did not carry their burden of proof.
Therefore, for the above and foregoing reasons the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
*1349 SHORTESS, Judge, dissenting.
This record establishes the following facts: that Stephen Boyd Harrell, born on July 25, 1974, was approximately 6½ years old at the time of the adoption hearing (January 20, 1981); that his father had seen Stephen on only two prior occasions, when he was six months and eight months old; that his mother was responsible for both occasions; that his father did not seek visitation rights when he obtained a divorce from petitioner on November 24, 1975; that his father subsequently remarried and has a 5-year-old daughter from his second marriage; that his father has never been under a court order to provide child support; that his father has been gainfully employed since Stephen's birth; that Stephen and his father both reside within the Parish of East Baton Rouge; and that his father has never contributed to Stephen's support or even given him a birthday or Christmas present.
The pertinent provisions of La.R.S. 9:422.1 are as follows:
If the spouse of the petitioner is the legitimate parent of the child or if the petitioner is the grandparent or grandparents of the child then the consent of the other legitimate parent is not necessary when the spouse of the petitioner or the grandparent or grandparents or the mother or the father have been granted custody of the child by a court of competent jurisdiction, and if any one of the following conditions exist:
* * * * * *
(3) The other legitimate parent has refused or failed to visit, communicate, or attempt to communicate with the child, without just cause, for a period of two years.
I agree with the majority that "a great amount of animosity developed between Charles Harrell and his in-laws." I disagree that this fact, or the fact that the mother did not feel that Charles should see Stephen if he would not support him, provided the father with just cause not to communicate or attempt to communicate with his son.
I respectfully dissent.
NOTES
[1] La.R.S. 9:403 provides:

"A. A child shall be considered abandoned when clear and convincing evidence is introduced at a judicial proceeding to prove either:
"(1)(a) the child has been deserted for a period of at least four months by his parent or parents, the whereabouts of his parent or parents are unknown, the parent or parents have made no provision for the child's care and support and have shown an intention to avoid parental responsibility; or
"(b) the parent or parents have failed to provide for the care and support of the child for a period of at least four months under circumstances showing an intention to permanently avoid parental responsibility.
"(2) The introduction of clear and convincing evidence which establishes the facts required by Subparagraphs (1)(a) or (1)(b) of this Subsection shall create a presumption that the parent or parents intended to permanently avoid parental responsibilities. The child shall be declared abandoned unless the parent or parents present evidence that rebuts the presumption. A parent adjudged to have abandoned his child under Subparagraphs (1)(a) or (1)(b) shall thereafter have no right to object to or oppose any proceeding to adopt that child.
"This Part shall not be construed to require physical care of a child by a parent or parents to whom custody has been denied or from whom custody has been removed by a court of competent jurisdiction.
"For purposes of this Subsection, custody shall be deemed to have been removed or denied to a parent only when such denial or removal is incidental to an action for divorce or separation from bed and board.
"Nothing in this Subsection shall be construed to provide a method by which the consent of the noncustodial parent can be dispensed with in adoption proceedings instituted under the provisions of R.S. 9:422.1.
"B. An affidavit may be made by an agency, or an officer of the court, before the judge or clerk of the juvenile court having jurisdiction over the child setting forth in general terms the facts constituting abandonment and the place or residence of the parent of the child if known to the deponent. The judge shall then by order fix a time and place for the hearing of this matter not less than sixty days after the date of the order. If the parent of the child resides within the state, notice of the hearing shall be served upon the parent as in civil proceedings, at least thirty days prior to the date fixed for hearing which and if the residence of the parent be out of the state, notice of the hearing shall be sent by the clerk of court to the parent by registered mail, if his address be shown in the affidavit, at least thirty days prior to the hearing. If the parent resides out of the state or cannot be served in the state within ten days after the issuance of process, the court shall appoint an attorney at law as curator ad hoc and legal representative of the parent, and notice of the hearing shall be served upon the curator ad hoc. The curator ad hoc shall make a diligent effort to locate the parent. In the event that the curator ad hoc shall fail to locate the parent within twenty days to notify him of the pendency of the proceedings, he shall report his failure to the court whereupon the court shall then direct the department by mail or otherwise to make a diligent effort to locate the parent and inform him of the pendency of the proceedings. The department shall report its findings in writing to the court on or before the date fixed by the court which shall not be less than twenty days from service of notice. The department may ask for a further delay which may be granted for good cause. Proceedings insofar as the parent are concerned shall be had contradictorily with the curator ad hoc and be of full force and legal effect against the parent. The date for the hearing may be continued from time to time by the judge for good cause, upon such notice to parties as he may determine.
"C. In the event the facts constituting abandonment are proved by clear and convincing evidence to the satisfaction of the court, the court shall decree the child to be an abandoned child and may place the child in the custody of an agency, a person or persons, or may make any other disposition of the child that is in the best interest of the child.
"D. Repealed by Acts 1980, No. 747, § 3.
"E. The person identified as a parent in the affidavit alleging abandonment shall have juridical capacity for such proceedings regardless of age or matrimonial state.
"F. With reference to Subsection (E), no action to annul any court order or decree of abandonment rendered prior to July 31, 1970 shall be brought after the lapse of sixty days from July 31, 1970.
Amended by Acts 1970, No. 568, § 1; Acts 1977, No. 249, § 2; Acts 1980, No. 747, § 1."