BOUTALL, Judge.
Sidney C. Miles, natural father of Timothy Miles, appeals the trial court’s granting of the adoption of his minor son to Walter Ross, present husband of the child’s mother. The trial court granted the adoption under the authority of R.S. 9:422.1(2), holding the consent of the father to be unnecessary. We reverse, concluding that sufficient support was furnished to render that statute inapplicable.
A judgment of divorce was granted between appellant and Dale Miles (now Mrs. Ross), the child’s mother, in November of 1974. Mrs. Ross took a default judgment in the divorce, and was awarded custody of the child. She sought no child support decree, though her ex-husband was then residing in New Orleans and continued to do so until July of 1976.
*764 It is appellant’s position that the reason his ex-wife sought no child support was because the couple came to an alternate support agreement whereby he transferred his V2 interest in their uptown house as a lump sum child support settlement, as evidenced by the community property settlement of 1976. This child support agreement was not in writing, however, the community property partition, wherein ownership of the house was assigned to Mrs. Ross, was submitted into evidence.
In his Reasons, the trial judge found that this alternate agreement did exist, and we are of the same opinion.
As an additional measure of child support, appellant, prior to the 1976 community property/child support settlement, took out a $5,000.00 savings certificate in his and his son’s name. Subsequently, however, Sidney Miles cashed in the certificate, unknown to his ex-wife.
In 1978 Mrs. Ross sold the uptown house. The couple had bought the house in 1972 for $31,500.00. The house sold in 1978 for $93,-750.00. These are the only two figures on which the parties can agree. The origin of a $10,000.00 payment made by Sidney Miles on the mortgage after he and his wife had separated is disputed, as well as the value of renovations done by Mrs. Ross and her second husband, which they value at $15,-000.00 not including labor.
When the house was sold, the balance remaining on the mortgage was approximately $12,000.00 if we do not count a $6,000.00 loan which Mrs. Ross took against the mortgage to start a business.
Thus the sale of the house in August, 1978 netted Mrs. Ross approximately $81,-000.00. She testified that she reinvested this money into the family home that she and her second husband were constructing in Lafitte.
In 1979, less than a year after the sale of the house, Mrs. Ross instituted a URESA action (Uniform Reciprocal Enforcement of Support Act, R.S. 13:1641 et seq.) in North Carolina seeking child support against her ex-husband, who was then living there and pursuing a master’s degree. Mrs. Ross testified that she needed support for her son’s private school tuition, and when she went to the bank to cash in the $5,000.00 savings certificate, she discovered with chagrin that appellant had already withdrawn it.
The URESA action was continued indefinitely when Mrs. Ross failed to comply with discovery requests regarding documentation of financial need.
Then in 1980 Mrs. Ross’ present husband petitioned for adoption of the minor child Timothy Miles. The trial judge granted the adoption pursuant to La.R.S. 9:422.1(2). We reprint here the entire statute for purposes of further discussion.
422.1 Adoptions of stepparent, grandparent; consent
If the spouse of the petitioner is the legitimate parent of the child or if petitioner is the grandparent or grandparents of the child then the consent of the other legitimate parent is not necessary when the spouse of the petitioner or the grandparent or grandparents or the mother or the father have been granted custody of the child by a court of competent jurisdiction, and if any one of the following conditions exist:
(1) The other legitimate parent has refused or failed to comply with a court order of support for a period of one year.
(2) The other legitimate parent is a non-resident of this state and has failed to support the child for a period of one year after judgment awarding custody to the mother or father or grandparent or grandparents.
(3) The other legitimate parent has refused or failed to visit, communicate, or attempt to communicate with the child, without just cause, for a period of two years.
We must reverse the trial court’s decision because we find that the requirements of subsection (2) of the statute have not been met.
It is evident from the trial court’s lengthy and carefully written reasons that the best interests of the child were a major *765 factor in his decision. The record indeed reflects that Mr. and Mrs. Ross are providing a fine, stable family environment for Timothy Miles. Nonetheless, La.R.S. 9:422.1 is in derogation of natural parental rights and must be construed stricti juris. In re Ackenhausen, 244 La. 730, 154 So.2d 380 (1963).
We turn now to the question of how much support is enough to prevent the operation of La.R.S. 9:422.1(2). We have found no cases on this point concerning subsection (2) of the statute. However, with regard to “the failure or refusal to support” provision of subsection (1) of La. R.S. 9:422.1 our Supreme Court has said:
If a parent under court order to support a child has not made a significant support payment within a year prior to filing of the petition for adoption, that parent loses the right to prevent the adoption by withholding consent.
In re Haynes v. Mangham, 375 So.2d 103 (La.1979). In Haynes the natural father had made the equivalent of three months payment in the year in question, in other words 25% of his support obligation for that year. The court held that this amount was enough that the father had not “failed to comply with a court order of support for a period of one year.”
Since subsection (2) of the statute contains analogous “failure of support” language, we use the guidelines developed by the jurisprudence interpreting subsection (1), and we find that appellant furnished some support in the year preceding the adoption action.
From the information in the record we cannot say that in the year preceding Mr. Ross’ petitioning for adoption, appellant “failed to support” his minor son. The record indicates that at least partial support was furnished by means of the V2 interest in the house which appellant assigned to his ex-wife. From the manner in which the financial information appears in the record it is impossible to assign an exact value to the support. However the term should not be the lifetime of the parties but the period pertinent to this action. Depending upon the set of figures we use, the appellant’s interest in the house was worth between $15,000.00 and 130,000.0o.[1] Suffice it to say that for the years in question, from 1974 when the couple separated to 1980, a total of six years, appellant’s interest in the uptown house furnished an amount of support which was significant enough to prevent operation of La.R.S. 422.1(2).
We note with approval the trial court’s statement that a parent may not unilaterally decide on the amount of support the child will receive during minority. A child support agreement is always subject to modifications by the trial court. Therefore our holding is limited to a finding that during the years prior to the adoption preceding, appellant provided an amount of support significant enough to remove him from the operation of La.R.S. 9:422.1(2). We do not pass on the question of whether appellant’s assignment of his interest in the house is -sufficient to provide for the minor child until the child reaches majority.
Appellant has raised the question of constitutionality of Subsection (2) pointing out a significant difference in treatment of residents and non-residents. A troubling aspect of this case is that the trial court made a finding of appellant’s failure to support when there had never been a judicial determination of the amount needed for support of the child. We note that appellee brought, but did not pursue, a URESA action. As we mentioned above, the statute and the jurisprudence are silent as to the meaning of “failure to support” under La. R.S. 9:422.1(2). Furthermore, we are cognizant that subsection (2) of the statute was added by the legislature in 1962 to redress the problem of the custodial parent unable to get a support judgment against an out of state parent and unable to have the child adopted without the absent parent’s consent. In re Stanford, 313 So.2d 849 (La. App. 2d Cir.1975).
Appellant argues that the relative ease of bringing a URESA action against the ab *766 sent parent requires that the custodial parent must establish financial need against the absent parent, if his whereabouts are known. Otherwise, a father believing that he has provided for the support of his child could move out of state and have his child adopted by another when during the adoption proceeding the trial judge decides, in retrospect, that the father has not provided sufficient support to preserve his right to dissent from the adoption. In such a situation, subsection (2) of the statute would be open to claims of constitutional infirmity.
However we have held that this father has furnished significant support so that the statute does not apply. Accordingly we do not pass upon the constitutional question except we comment that- it is a serious issue.
For the foregoing reasons, the judgment appealed is reversed and the adoption is annulled at appellee’s costs.
REVERSED.

. Appellant testified that he and his ex-wife valued the house at $60,000.00 at settlement.