517 So.2d 974 (1987)
In re Michael Edward KIRBY Applying for Adoption of Albert P. J., Plaintiff-Appellee,
v.
Dr. ALBERT T. J.,M.D., Defendant-Appellant.
No. 86-911.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1987.
*976 Gold, Simon, Aleems, Bruser, Sharp, Sues & Rundell, Peggy St. John, Alexandria, for plaintiff-appellee.
Chris Roy, Alexandria, for defendant-appellant.
Before DOMENGEAUX, GUIDRY and DOUCET, JJ.
DOUCET, Judge.
This case concerns an appeal from a judgment rendered in an adoption proceeding. Appellant, Dr. Albert T.J., the natural father of the child involved, appeals from a judgment granting the petitioner, Michael Edward Kirby, now deceased, the adoption of his stepson, Albert P.J. (hereinafter referred to as Bert). This case was consolidated on appeal with In re Kirby, 517 So. 2d 981 (La.App. 3rd Cir.1987), in which a separate opinion was rendered this date.
The facts show that Dr. J. and Anna Joyce Hensel, Bert's natural mother, were married in Alexandria, Louisiana on June 18, 1972. Shortly thereafter the couple moved to Houston, Texas and then to Washington, D.C. where Dr. J. began receiving medical training at Bethesda Naval Hospital. On January 11, 1974, Bert was born. The marriage was unstable and, in December 1975, Anna Joyce and Bert returned to Alexandria to live with her parents while Dr. J. remained in Washington. In 1976 Anna Joyce obtained a legal separation from appellant. In 1977 she was granted a divorce and was awarded sole custody of Bert. The record reflects that Dr. J. contacted an attorney in Alexandria in connection with at least one of these suits but made no personal appearance in either. Neither judgment provided for child support or visitation.
At the time of the divorce Dr. J. was in Montreal, Canada receiving further medical training. While there he remarried. In 1979, Anna Joyce and Bert moved to Beaumont, Texas where she remarried. That short-lived marriage was later annulled and, in 1980, Anna Joyce and Bert moved to Baton Rouge. Meanwhile, in fulfillment of a commitment to the United States Navy, Dr. J. was transferred to the Philippine Islands where he remained until October 1981 when he returned to the states. He then assumed duties at Bethesda for the remainder of his tour of duty. Anna Joyce married Michael Kirby in December 1982 and, in 1984, they moved from Baton Rouge to Alexandria with Bert and Michael's two children from a previous marriage.
Dr. J. was discharged from the Navy in May 1983, and in July of that year moved to Kalispell, Montana where he set up a neurosurgery practice. At the time of the hearing on this matter, Dr. J. had two children by his second wife. On September 20, 1985, Michael Kirby filed the petition for adoption. Mr. Kirby sought to adopt Bert without Dr. J.'s consent pursuant to La.R.S. 9:422.1 which reads:
"If the spouse of the petitioner is the legitimate parent of the child or if the petitioner is the grandparent or grandparents of the child, then the consent of the other legitimate parent is not necessary when the spouse of the petitioner, or the grandparent or grandparents, or the mother or the father has been granted custody of the child by a court of competent jurisdiction, and if any one of the following conditions exist:
(1) The other legitimate parent has refused or failed to comply with a court order of support for a period of one year.
(2) The other legitimate parent is a nonresident of this state and has failed to support the child for a period of one year after judgment awarding custody to the mother or father or grandparent or grandparents.
(3) The other legitimate parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of two years."
Following trial on the merits the district judge took the matter under advisement. He later ruled that Dr. J., a non-resident *977 of Louisiana, had failed to support Bert for a period of one year after Anna Joyce was awarded custody in 1979. The trial judge also found the evidence showed that Dr. J. failed to communicate with his son for a period of two years. Thus, pursuant to R.S. 9:422.1 (2) and (3) the trial court determined that Dr. J.'s consent to the adoption was not necessary and the adoption was granted with the judgment signed on June 13, 1986. Dr. J. filed a notice of appeal on July 1, 1986. Tragically, on August 21, 1986, pending the devolutive appeal, the adoptive father, Michael Kirby, took his own life. Anna Joyce Kirby was appointed as petitioner's succession representative and substituted for purposes of this appeal.
On Appeal, Dr. J. cites four assignments of error:
(1) The trial court erred by not requiring petitioner to meet his burden of proof by clear and convincing evidence.
(2) The trial court erred in concluding that the conduct of Dr. J. was sufficient to meet the requirements of La. R.S. 9:422.1.
(3) That La.R.S. 9:422.1 (2) is unconstitutional based upon its treatment of nonresidents.
(4) The trial court erred by finding that the adoption would be in the best interest of Bert.
While not denominated as an assignment of error, appellant raises a question concerning abatement of actions. He asserts that the petition for adoption was personal as to Michael Kirby and, that upon his death, his action abated pursuant to La.C.C.P. art. 428. Appellant cites no authority in support of his interpretation of C.C.P. art. 428 and we disagree with his position. A final judgment was rendered which determined the merits of the action and granted the adoption. C.C.P. art. 428 refers to abatement of actions and does not contemplate a similar result when a party dies following rendition of a final judgment even while there is an appeal pending.
In Castelluccio v. Cloverland Dairy Products Co., 165 La. 606, 115 So. 796 (1928) the Supreme Court encountered an argument similar to the one set forth by appellant. There the plaintiff had filed a suit for personal injuries. A final judgment was rendered in his favor and, as in the case at bar, he passed away pending disposition on appeal. Rejecting defendant's assertion that the "action" had abated the court stated:
"Appeals are not granted from actions, but from final judgments into which the action has been merged. It is clear, therefore, that no action remained to lapse on appeal, after final judgment had been rendered in the lower court in favor of decedent. Under our law, judgments do not fall by the death of those in whose favor they have been rendered."
When a child is adopted, both he and the adoptive parent acquire important rights. The adopted child is considered for all purposes as the legitimate child and forced heir of the adoptive parent. The adopted child has the right to inherit from the adoptive parent or that parent's relatives by blood or adoption. The adoptive parent or his relatives by blood or adoption also have the right to inherit from the adopted child. These inheritance rights vest in the respective parties in the same manner and to the same extent as if the person adopted were in fact the legitimate child of the adoptive parent. La.C.C. art. 214. In addition, La.C.C. arts. 2315.1 and 2315.2 include an adopted child and the adoptive parent in the class of beneficiaries who may bring a survival or wrongful death action for the injury or death of the adopted child or adoptive parent.
In view of these substantive rights becoming vested in the respective parties, the reasoning and holding set forth in Castelluccio, supra, is all the more applicable to the facts of this case. We are unable to accept appellant's argument that somehow the adoption should be disturbed because of the death of the adoptive parent, Michael Kirby.
Appellant's constitutional argument addresses the apparent different treatment accorded a resident parent under R.S. *978 9:422.1 (1) and a non-resident parent under R.S. 9:422.1 (2). Assuming arguendo that we find section (2) unconstitutional, sections (1) and (3), together with the rest of the statute would be enforceable; that is, section (2) would be severable from the rest of the statute which would form a complete act of itself. See State v. Cox, 352 So.2d 638 (La.1977); State v. Clark, 467 So.2d 602 (La.App. 3rd Cir.1985). As we are able to dispose of this appeal based upon R.S. 9:422.1 (3) we find it unnecessary to address this assignment of error.
Petitioner Michael Kirby had the burden of showing at trial that Dr. J. refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of two years. La.R.S. 9:422.1 (3); Matter of Harrell, 413 So.2d 1346 (La.App. 1st Cir.1982). The provisions of La.R.S. 9:422.1 are in derogation of the natural rights of the legitimate parent and must be strictly construed in his favor. Wyatt v. Department of Public Welfare, 442 So.2d 1369 (La.App. 3rd Cir.1983); Ross v. Miles, 430 So.2d 763 (La.App. 5th Cir.1983). The trial court found that petitioner met his burden of proof and on appeal we must determine whether the record evidence furnished a reasonable factual basis for the trial court's factual finding. If we find such a factual basis and cannot say that the finding was clearly wrong we may not disturb it. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
A determinative factor is the application of the two-year time period provided by R.S. 9:422.1 (3). The one-year time period applicable in cases of non-support was examined by the Fourth Circuit Court of Appeal in In re Daboval, 377 So.2d 459 (La.App. 4th Cir.1979), writ denied, 380 So.2d 101 (La.1980) and State in Interest of Shroeder, 470 So.2d 250 (La.App. 4th Cir.1985). In Daboval, then Judge Lemmon wrote that the critical time period was the date of the hearing on the petition for adoption; that is, if the legitimate parent had not complied with a court order of support for one year prior to the date of the hearing, under R.S. 9:422.1 that parent's consent to the adoption was not necessary. In Shroeder, supra, the court reiterated its holding in Daboval, supra, but explained that after the petition was filed a legitimate parent could not make payments before the hearing and thereby defeat the application of the statute. We find the reasoning in Daboval, supra, and Shroeder, supra, equally applicable in cases which involve the two-year time period provided by R.S. 9:422.1 (3).
It is not disputed by Dr. J. that he failed to visit his son Bert after he and his wife physically separated in December 1975. Until the date of the hearing on this matter, March 27, 1986, Dr. J. had not seen his son for more than ten years. Dr. J. also failed to speak to his son during this same period. He apparently sent Bert several gifts and letters over the years including some Christmas gifts admittedly received by Bert. He further claimed that he sent Bert gifts for Christmas of 1980 but they were returned to him in the Philippines.
Upon Dr. J.'s return to the United States in 1981 he claimed that he telephoned Mrs. Hensel, Anna Joyce's mother, at her home in Alexandria to inquire into the whereabouts of Anna Joyce and Bert. He testified that she refused to tell him. Dr. J. made no further attempt to locate Anna Joyce or Bert until November 14, 1983, when he claimed he dictated a letter to his secretary addressed to Mrs. Hensel again inquiring into the whereabouts of Anna Joyce and Bert and expressing an interest in seeing Bert. This letter was never received by Mrs. Hensel, her husband, or Anna Joyce. Nothing was heard from Dr. Joern until this petition for adoption was filed in September 1985.
Assuming that the November 14, 1983 letter allegedly sent by Dr. J. to the Hensel home would be a sufficient "attempt to communicate" as contemplated by R.S. 9:422.1 (3), clearly Dr. J. failed to visit, communicate or attempt to communicate with Bert from that time until the hearing on March 27, 1986, well over the two year period provided by the statute. Therefore, we now examine the evidence with regard *979 to the presence or absence of just cause for Dr. J.'s inaction.
Dr. J. claimed that he had just cause for failing to visit, communicate, or attempt to communicate, with Bert. He cited several reasons, including his assertion that he could not locate Anna Joyce through the telephone directory after she moved from Beaumont in 1980; that Anna Joyce's parents attempted to keep her and Bert's whereabouts from him; that he could not afford to locate them through an attorney; that even if he had located them he could not have afforded to wage a legal battle to obtain the right to visit Bert; that his commitment to the Navy prevented him from locating and visiting Bert; that he did not want to embroil Bert in any controversy that might adversely affect his emotional well-being; and that he and Anna Joyce agreed that he would not see Bert until he was older.
Anna Joyce testified that after she moved from Beaumont to Baton Rouge in 1980, she was listed in the business section of the white pages under the name of A.J. J. A copy of a page from a 1982 telephone directory was introduced in evidence substantiating her claim. Dr. and Mrs. Albert Hensel testified that at no time did they desire or attempt to keep from Dr. J. the whereabouts of Anna Joyce or Bert. They testified that they lived at the same address in Alexandria since before Dr. J. and Anna Joyce were married, and that until several months before trial, they had an answering service to take all calls to their home. After the November 1981 phone call from Dr. J. they received no further phone calls from him.
Dr. J. first testified that he could not have afforded to locate Bert after he lost track of him in 1980. Later he admitted that he could have done so but could not have afforded the legal battle which he claimed would be necessary to visit Bert. Somehow this contention does not seem valid as his income tax returns showed that his gross income in 1982, 1983 and 1984 was $72,692, $89,919, and $313,582, respectively. In response to this evidence, Dr. J. cited back surgery performed on him in 1982 after which, he claims, his earning capacity was in doubt. He also cited the high costs of setting up his own neurosurgery clinic.
Dr. J. was receiving medical training, some in Canada, from the time he and Anna Joyce separated in 1975 until he was sent to the Philippines in 1980. However, he found time to marry again in 1979 and after returning to the states in 1981 was only limited by being stationed at Bethesda until his discharge from the Navy in the middle of 1983.
Anna Joyce denied there was ever an agreement between she and appellant that he would not visit Bert. This is substantiated by letters written by their respective attorneys which were introduced into evidence. It is apparent that there was some animosity on the part of the appellant towards Anna Joyce. Eight letters from appellant to Anna Joyce dating from February 1976 to June 1980 were introduced in evidence by the appellant. The letters clearly reflect his animosity towards Anna Joyce. The letters also reflect a desire on the part of appellant to maintain a relationship with his son and to avoid hurting him by any actions on their part. However, in one letter appellant states that he does not want any more "bullshit" letters about Bert. This was an admitted reference to letters from Anna Joyce detailing little Bert's development and activities. Dr. J. testified that he did not want such letters or pictures of Bert because it hurt him.
To constitute just cause, a parent's failure to visit, communicate, or attempt to communicate with his child must be due to factors beyond his control. Adoption of Dore, 469 So.2d 491 (La.App. 3rd Cir.1985). The trial judge found no just cause for Dr. J.'s inaction and in his reasons for judgment stated:
"To summarize, Mrs. Kirby never attempted to hide Bert from his natural father; Dr. J. had several inexpensive sources whereby he could have located his son; and Dr. J.'s tax returns from the years in question show that he had ample financial means to conduct any necessary *980 investigation in order to find his son. The long absence of communication between Dr. J. and Bert was due to the defendant's own lack of initiative in locating the child."
We find that the evidence furnishes a reasonable factual basis for this finding and we are unable to say that it was clearly wrong. Between November 1983 and the date of the hearing, Dr. J. had ample resources and opportunity to locate and contact his son Bert. The evidence supports the finding by the trial judge that no attempt was made to hide Bert from his father. He could always have contacted the Hensels at whose home he and Anna Joyce's wedding reception had been held.
We feel this case easily meets the requirements of the statute. We frankly are of the opinion that neither Dr. J.'s letter of November 14, 1983 or his telephone call to Mrs. Hensel in November 1981 were meaningful attempts to communicate with Bert which would have rendered R.S. 9:422.1 (3) inapplicable. Just as Louisiana courts have interpreted R.S. 9:422.1 (1) and (2) as requiring "significant" support payments[1] we feel that 9:422.1 (3) requires more than a token attempt by a legitimate parent to communicate with his or her child. It can hardly be argued that Dr. J. made anything more than token attempts to communicate with Bert, at least for a period of some five years before the hearing of this matter.
Citing the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.A. App. § 501 et seq, appellant sets forth an argument that his status as a serviceman should have made it necessary to notify him that the "rules had changed." This is an apparent reference to an alleged agreement entered into by appellant and Anna Joyce that she would keep him informed as to Bert's whereabouts. He claims that Anna Joyce breached that agreement and since the Soldiers' and Sailors' Civil Relief Act is intended to dispense with the necessity of servicement litigating while in the service, he should not be held accountable for his failure to visit, communicate or attempt to communicate with Bert. We reject this argument as the evidence shows appellant had ample opportunity to locate and contact Bert at all times through the Hensels. Moreover, Dr. J. was discharged from the service in October of 1983.
Even if the consent of the legitimate parent is unnecessary the adoption may not be granted unless the court finds that it is in the child's best interest. Adoption of Latiolais, 384 So.2d 377 (La.1980); Wyatt, supra; In re H, 437 So.2d 895 (La. App. 2nd Cir.1983). The trial court's finding as to the best interest of the child is a finding of fact and will not be disturbed on review unless there is no reasonable factual basis for the finding or it is clearly wrong. Arceneaux v. Domingue, supra.
Appellant contends that the petitioner was required to prove by clear and convincing evidence that Dr. J. failed to visit, communicate, or attempt to communicate with his son for a period of two years without just cause and that the adoption was in the best interest of Bert. We initially note that by plaintiff's own admission, he did not visit, communicate, or attempt to communicate, with Bert after sending the letter of November 14, 1983, more than two years prior to the hearing. Therefore, as to the existence of this fact there can be no dispute.
As authority for his position appellant cites a Louisiana case involving the termination of parental rights by the state under a statutory scheme, La.R.S. 13:1600 et seq. which mandates either proof by clear and convincing evidence or proof beyond a reasonable doubt. We can find no case where an adoption was granted pursuant to La.R.S. 9:422.1 in which the petitioner was required to meet his burden of proof by clear and convincing evidence. The statute itself makes no mention of a higher standard of proof than that required in an ordinary civil action and we are not prepared to jurisprudentially implement *981 such a standard. However, we find the record evidence in this case was sufficient to establish by clear and convincing evidence that the adoption was in the best interest of Bert. The record does not indicate what standard of proof the trial judge applied but under our finding it does not matter.
The evidence shows that Bert, twelve years old at the time of trial, had a close, loving relationship with his stepfather. The two hunted, fished, and built antique firearms together. Bert testified that he loved "his dad" as he referred to the petitioner. He stated that he had never seen his natural father and didn't know what he would be like. He further stated that, although he would like to visit his natural father, he wished to be adopted by Michael Kirby even if he could never make such visits. Bert had used the last name of Kirby since his mother and petitioner were married. Michael Kirby testified that he loved Bert as a father loves a son.
Prior to the date of the hearing Dr. J. had not seen Bert since December 1975. Although he mentioned Bert in his early letters he made no meaningful effort to visit or communicate with him for over eleven years. Although Dr. J. professed a desire not to hurt Bert emotionally one can assume the child was hurt by the almost complete indifference shown him by appellant over the years. Appellant allowed his own animosity towards Anna Joyce to interfere with his obligation as a father. Accordingly we find the trial court had an ample factual basis to find, either by a preponderance of the evidence or by clear and convincing evidence that the adoption was in the best interest of Bert.
For the reasons assigned we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] See Haynes v. Mangham, 375 So.2d 103 (La. 1979); In re Adoption of Broussard, 469 So.2d 454 (La.App. 3rd Cir.1985), writ denied, 474 So.2d 1303 (La.1985); Derosier v. Dean, 378 So.2d 588 (La.App. 3rd Cir.1979).