# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**23-248**

**IN RE:  L.W.B. AND S.S.B. IN THE INTEREST OF K.S.B. AND E.R.G.**

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, DOCKET NO. A-2023-0001
HONORABLE C. KERRY ANDERSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

**LEDRICKA J. THIERRY**
**JUDGE**
\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Ledricka J. Thierry and Wilbur L. Stiles, Judges.

**REVERSED.**

**Frank Granger, APLC**
**1135 Lakeshore Drive, 6ᵗʰ Floor**
**Lake Charles, LA  70601**
**(337) 439-2732**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **L.W.B. and S.S.B.**

**Micah Clemons**
**Todd Clemons & Associates, APLC**
**1740 Ryan Street**
**Lake Charles, LA  70601**
**(337) 477-0000**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **A.G.**

**THIERRY, Judge.**

The appellant, A.G.[1], appeals the judgment of the trial court terminating his parental rights and granting the intrafamily adoption of his biological daughter, E.R.G., to appellees, S.S.B. and L.W.B. (the maternal grandmother and step grandfather of E.R.G.).

## FACTS AND PROCEDURAL HISTORY

This appeal involves the adoption proceedings pertaining to E.R.G., who was born on September 30, 2017. The mother is M.B., who is the daughter of S.S.B. The biological father of E.R.G. is A.G. L.W.B. is the husband of S.S.B. and the stepfather of M.B.

For the first few years of her life, E.R.G. resided with her parents and her older half-sister, K.S.B. (A.G. is not the biological father of K.S.B.). In July of 2019, S.S.B. was voluntarily given custody of K.S.B. by M.B. In September of 2019, S.S.B. filed a Petition for Ex Parte Custody of K.S.B. and E.R.G. After the filing of that petition, on January 13, 2020, M.B. executed a joint stipulation awarding sole custody of E.R.G. to S.S.B. That stipulation was confirmed by a consent judgment read and rendered by the trial court on January 22, 2020.

The record establishes M.B. did not maintain contact with E.R.G. when she went to live with S.S.B. and L.W.B., but A.G. did continue to stay in contact with his daughter. On January 30, 2020, A.G. filed a rule seeking joint custody. A hearing on November 5, 2020, confirmed joint custody of E.R.G. with S.S.B. and A.G. The court granted A.G. visitation with E.R.G. on the "first, third and fifth weekends, Fridays if there were five weekends, some specific holiday visitation, and some other terms." A judgment signed on July 7, 2021, provided that S.S.B. and

---

[1] Pursuant to Rule 5-2 of the Uniform Rules—Courts of Appeal, initials will be used to ensure the confidentiality of the minors that are involved in this proceeding.

A.G. would share custody of E.R.G. on a week-to-week basis beginning July 11, 2021.

S.S.B. filed an ex parte motion on January 20, 2022 to suspend A.G.'s visitation. This was based on S.S.B. alleging that E.R.G. told her she had been sexually abused by A.G. S.S.B. brought E.R.G. to the emergency room the night E.R.G. told her of the alleged abuse and reported the allegation to law enforcement. On March 3, 2022, A.G. was arrested on one count of aggravated crime against nature in violation of La.R.S. 14:89.1(A)(2).[2] A.G. has maintained his innocence on this charge. On April 18, 2022, S.S.B. filed a protective order against A.G. to prohibit him from contacting E.R.G. The protective order was signed that same day by the court. A.G. signed a joint stipulation awarding sole custody of E.R.G. to S.S.B. with no right of visitation to himself. On May 2, 2022, a judgment to this effect was signed by the trial court.

On January 6, 2023, S.S.B. and her husband, L.W.B., filed a Petition for Intrafamily Adoption of both K.S.B. and E.R.G. On February 1, 2023, A.G. filed an answer and opposition to the Petition for Intrafamily Adoption as pertaining to E.R.G. A.G. specifically argued that any failures to communicate with E.R.G. were a result of the protective order that had been issued and not due to any intent on his part. The protective order prohibited A.G. from contacting E.R.G. "personally, through a third party, or via public posting, by any means, including written, telephone, electronic (text, email, messaging, or social media) communication."

Trial on the adoption of K.S.B. occurred on February 14, 2023 and on February 15, 2023 as to the adoption of E.R.G. M.B. appeared and testified pertaining to the adoption of both children. Following the hearings, the trial court

---

[2] Trial on the charge is pending in the Fourteenth Judicial District Court.

granted the adoption of both children to S.S.B. and L.W.B. The trial court specifically found A.G. did not have just cause for his failure to communicate with E.R.G. for a period in excess of six months. Accordingly, the trial court held his consent to the adoption was not necessary. The trial court then found the adoption was in the best interest of E.R.G., terminated A.G.'s parental rights and granted the adoption to S.S.B. and L.W.B.

M.B. filed no appeal as to either child, thus, the termination of her parental rights is final. A.G. has appealed the granting of the adoption pertaining to E.R.G., and asserts the following assignments of error:

1. The trial court erred when it found the statutory grounds for stripping A.G. of his parental rights based on his lack of contact with E.R.G. without just cause were satisfied where that lack of contact was in compliance with a permanent protective order;

2. The trial court erred when it determined that adoption was in E.R.G.'s best interest.

## ANALYSIS

This court in the case of *In re W.E.B.*, 07-1395, pp. 3-4 (La.App. 3 Cir. 3/5/08), 980 So.2d 123, 126, set forth the applicable appellate standard of review in adoption cases as follows:

> It is settled law that the denial or grant of a petition for adoption poses a question of fact. *Leger v. Coccaro*, 98-202 (La.App. 3 Cir. 4/29/98), 714 So.2d 770, *writ denied*, 724 So.2d 740 (La.7/2/98). Therefore, "[a]n appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong." *Blackman v. Brookshire Grocery Co.*, 07-348, p. 2 (La.App. 3 Cir. 10/3/07), 966 So.2d 1185, 1187 (citing *Rosell v. ESCO*, 549 So.2d 840 (La.1989)).

A.G. argues the trial court erred in two respects: (1) finding his failure to not visit or communicate with E.R.G. in excess of six months was without just cause; and (2) that the adoption was in the best interests of the child.

3

## I.      *Just Cause for the Failure to Visit/Communicate.*

Louisiana Children's Code Article 1193(2) provides that "consent to the adoption of a child or relinquishment of parental rights shall be required of the ... father of the child." However, La.Ch.Code art. 1245 provides exceptions when paternal consent to an intrafamily adoption is not required and provides, in pertinent part:

> A. The consent of the parent as required by Article 1193 may be dispensed with upon proof by clear and convincing evidence of the required elements of either Paragraph B, or C of this Article at the hearing on the opposition and petition.
>
> B. When a petitioner authorized by Article 1243 has been granted custody of the child by a court of competent jurisdiction and any one of the following conditions exists:
>
> (1) The parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.
>
> (2) The parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.

The party petitioning for adoption has the initial burden of proving that a biological parent's consent is not required due to the parent's nonsupport of or lack of communication with the child by clear and convincing evidence. *In re R.A.L.*, 54,052 (La.App. 2 Cir. 7/14/21), 323 So.3d 1006; *In re Orgeron*, 94-458 (La.App. 5 Cir. 11/16/94), 646 So.2d 1137. Once a prima facie case is proven, the opposing parent then has the burden of proving that his failure to provide support or communicate with his child was with "just cause." *In re C.B.*, 94-755 (La. 10/17/94), 643 So.2d 1251. The jurisprudence is consistent that "[t]o constitute just cause, a parent's failure to visit, communicate, or attempt to communicate with his child must be due to factors beyond his control. *Kirby v. Albert T.J.*, [517 So.2d 974, 980 (La.App. 3 Cir.), *writ denied*, 519 So.2d 107 (La.1987)]; *Adoption of Dore*, 469 So.2d 491 (La.App. 3 Cir.1985)." *Radke v. Fontenot*, 93-1419, p. 4 (La.App. 3 Cir.

4

5/18/94), 637 So.2d 684, 688; see also *In re R.A.L.*, 54,052 (La.App. 2 Cir. 7/14/21), 323 So.3d 1006; *In re B.L.M.*, 13-448 (La.App. 1 Cir. 11/1/13), 136 So.3d 5.

In this case, since A.G. was opposing the intrafamily adoption, it would require the trial court to terminate his parental rights to grant the adoption as requested by S.S.B. and L.W.B. The supreme court has explained that the "[p]ermanent termination of the legal relationship existing between natural parents and children is one of the most drastic actions the State can take against its citizens." *State ex rel. A.T.*, 06-501, p. 5 (La.7/6/06), 936 So.2d 79, 82. Recognizing that the termination of parental rights is a severe and permanent action, the Louisiana Legislature has imposed strict procedural and evidentiary requirements to be met before a judgment of termination can be rendered. *State in Interest of T.L.*, 21-728 (La.App. 1 Cir. 12/22/21), 340 So.3d 4, *writ denied*, 22-170 (La.3/2/22), 333 So.3d 827.

The strict requirements in this case that must be met to involuntarily terminate A.G.'s parental rights are, as noted above, set out in La.Ch.Code art. 1245. The trial court concluded A.G.'s consent to the adoption was not necessary due to his failure to "visit, communicate, or attempt to communicate with the child without just cause" for a period in excess of six months as contemplated by La.Ch.Code art. 1245 (B)(2). There is no factual dispute that A.G. did not "visit, communicate, or attempt to communicate" with E.R.G. for a period exceeding six months. After the filing and signing of the Protective Order, A.G.'s lack of contact with E.R.G. was confirmed by numerous witnesses. S.S.B. and L.W.B. also point out that A.G. willingly consented to sole custody of E.R.G. in favor of them in the stipulated judgment filed May 2, 2022. A.G. also elected to exercise his Fifth Amendment right against self-incrimination and refused to testify at the adoption proceeding.

5

A.G. counters that there is no dispute he was a consistent part of E.R.G.'s life prior to the criminal allegations made against him. This, A.G. maintains, evidences his intent to be part of his daughter's life; and it was only the issuing of the protective order, and his forced legal compliance therewith, which led him to not visit or seek to communicate with his daughter. Accordingly, A.G. contends the trial court's protective order, signed on April 18, 2022, provided just cause for his failure to visit or seek any communication with E.R.G.

Louisiana Revised Statutes 46:1846 statutorily sets forth the prohibition on any communication between the offender and victim in any charged offense that is a felony, committed upon a family member, and provides:

> A. A person who has been charged by bill of information or indictment with any crime of violence as defined in R.S. 14:2 committed upon any person, any felony sex offense as defined in R.S. 46:1844(W) committed upon any person, any felony human trafficking-related offense as defined in R.S. 46:1844(W) committed upon any person, or any offense, that is a felony, committed upon a family member, household member, or dating partner, as those terms are defined by R.S. 46:2132, or any immediate family member of such person, **shall be prohibited from communicating, either by electronic communication, in writing, or orally, with a victim of the offense, or any of his immediate family members for which the person has been charged or for which disposition of the case is pending.**

(Emphasis added.)

Moreover, under the clear provisions of La.R.S. 14:79, which pertains to the violation of protective orders, it is clear that if A.G. made unapproved attempts to visit or communicate with E.R.G. he would have been subject to prosecution. Therefore, A.G. testified he complied with the protective order, maintaining he had no other viable alternative available to him. The trial court disagreed, finding A.G. did not have just cause, stating as follows:

> Anyways, the issue of just cause is what I'm legal [sic] addressing at this point. From all of the research that I have looked at, if the reason for the lack of communication or visitation is due to the

actions of the individual that is not just cause. Just cause is if it is something beyond your control. You are in a coma, or you are being held hostage somewhere. The typical case law on this subject has to do primarily from my research on this subject with people who are incarcerated. And if the incarcerated is not a just cause. If you haven't visited with your child because you've been in jail, that's not just cause, even though you could not visit with your child. If the reason for your incarceration was your own actions.

Now certainly there hasn't been a criminal trial at which [A.G.] has been found guilty beyond a reasonable doubt, but there have been opportunities for [A.G.] to confront these allegations and he [could have] chosen at least two or three occasions in both the 14th Judicial District Court and the 36th Judicial District Court to address those issues before a judge, and he has chosen not to.

That's his choice, he's not bound to do that. Now that may be on the advice of counsel, that may be the wise thing to do, but it's a choice. And you can't use that as an excuse that you had no other option. You could at any of those occasions had a hearing, forcing [S.S.B. and L.W.B.] or the State of Louisiana to – at a bond hearing, for example, to allow contact to prove or disprove these allegations. But to take it one step further, [A.G.] voluntarily consented and agreed – not only to a protective order, but he consented and agreed to a custody modification order which granted [S.S.B.] sole custody and which provided that he have no visitation.

He had the right at that trial setting before he stipulated to that, to present evidence, legal argument, testimony that he should be given visitation. Supervised, unsupervised, or whatever the case may be. But he chose to stipulate otherwise. So, I do not find that that is just cause for him not having communication or visitation or contact since November of 2021 in excess of six months.

I'm not aware of any case law which supports a finding otherwise, certainly if there is – I could be wrong on that subject matter. But I have not in my research found any case law which supports your position, Mr. Clemens (counsel for [A.G.]). So that is my ruling in terms of whether there was just cause for [A.G.] not visiting, communicating or attempting to visit or communicate in excess of six months.

The trial court does not address in his reasons that La.R.S. 46:1846 lists no provision for seeking court approval to allow for communication between the offender and victim. We also note that there was no discretion as to the prohibition against communication between A.G. and E.R.G. that La.R.S. 46:1846 requires; it occurs by operation of law when a person is charged with the type of crime as A.G. was in this case. Thus, the trial court's mention that A.G. "voluntarily consented and agreed" to a protective order is irrelevant as the prohibition against any

communication between he and E.R.G is mandated under the law by La.R.S. 46:1846. We also find that A.G. consenting to sole custody of E.R.G. in favor of S.S.B. while he contested the charges against him was simply a practical matter, as that stipulation simply provided for the same thing the issuance of the protective order did, i.e., that A.G. could have no contact with E.R.G. It would have occurred regardless of his consent.

Further, the trial court's reference of cases involving incarcerated parents is inapplicable to the facts of this case. It is imperative to note that A.G., at all times, has denied his guilt in the sexual abuse allegations made against him. Therefore, to impute that the issuance of the protective order against him is due to actions he committed, is essentially prejudging him guilty of those allegations. That simply is inappropriate. Moreover, the comparison of A.G. to incarcerated persons is premature as A.G. has yet to be convicted of the crime for which he is charged. Lastly, the comparison of A.G. to an incarcerated parent is not suitable because an incarcerated parent is not prohibited from attempting to communicate with his or her child. While it certainly may be more onerous to do so, there is no legal order preventing such communication as has been issued to A.G.

The protective order issued against A.G. on April 18, 2022, specifically prohibited him from contacting E.R.G. "personally, through a third party, or via public posting, by any means, including written, telephone, or electronic (text, email, messaging, or social media) communication." To violate that order would have subjected A.G. to arrest under La.R.S. 14:79. Therefore, he had just cause in not communicating with E.R.G. during the period in question. The trial court erred in taking the drastic action of terminating A.G.'s parental rights because he legally complied with the protective order issued by the court. Further, even if no protective order had been granted, A.G. was likewise prohibited under La.R.S. 46:1846 from

8

communicating with the alleged victim of his criminal conduct. Violation of that statute is a criminal offense. We further find that abstaining from criminal conduct, as it relates to the victim of his alleged crime, is just cause for the failure to communicate.

Having found that A.G. had just cause for his failure to communicate with E.R.G., his consent to the adoption is required by law. Accordingly, the granting of the adoption without that consent is not legally permissible and this court is bound to reverse that judgment.

## II. *Best Interests of the Child.*

With our finding that A.G. had just cause for his failure to communicate with E.R.G. and therefore his consent was legally required, any discussion as to the adoption being in the best interest of E.R.G. is rendered moot by that finding.

## DECREE

For the foregoing reasons, the judgment of the trial court terminating the parental rights of A.G. and granting the adoption is reversed. All costs of this appeal are assessed to appellees, S.S.B. and L.W.B.

**REVERSED.**