787 So.2d 546 (2001)
Margaret Anna MYERS Applying for Adoption of J.L. Myers, Plaintiff-Appellee,
v.
Barbara MYRICK, Defendant-Appellant.
No. 34,970-JAC.
Court of Appeal of Louisiana, Second Circuit.
May 17, 2001.
*547 Northwest Louisiana Legal Services by Mary Ellen Halterman, Shreveport, LA, Counsel for Appellant.
John Milkovich, Shreveport, LA, Counsel for Appellee.
NORRIS, STEWART & DREW, JJ.
DREW, J.
Natural mother appeals judgment granting stepmother's petition for intrafamily adoption. She correctly argues that the trial court used an incorrect standard under La. Ch. C. art. 1245(D)(2) and that there was never a period of two years when she did not have contact with her son. Accordingly, we reverse the judgment.

FACTS
The father and mother were married in 1987. The couple produced one child, a son named "JM" who was born in 1988. When the father returned home from work on December 26, 1991, he discovered that the mother had left with JM. The father found a note from the mother saying that she was leaving him. The mother was engaged in an adulterous relationship with another man at the time. The mother lived in Jonesboro, Louisiana at first, leaving JM with the father on weekends. In February 1992, she announced that she was moving to Ashland, Louisiana and wished to leave JM with his father.
The father filed a petition for divorce on February 21, 1992. The petition prayed for joint custody with the father named as domiciliary parent. A joint custody implementation plan was attached to this petition. On March 19, 1992, a judgment of custody was entered in accordance with the joint custody implementation plan. The mother and father eventually reconciled in May.
The mother left the matrimonial domicile with JM again on August 6, 1992. This time she left a note stating that she had taken JM to Texas for the weekend. The father's concern increased when the mother and JM did not return the following Monday, so he filed a missing person's report with the Bienville Parish Sheriff's Department. The father did not know the whereabouts of his wife and child for two weeks. On August 18, the father learned from his brother that the mother was staying at a trailer in Calcasieu Parish that was owned by the father's cousin. The father and his brother drove to Calcasieu Parish, where they received permission from the cousin to enter the trailer. The mother answered the father's knock at the door. The father walked into the trailer, picked JM up, walked out and returned to *548 Castor. The mother later moved in with her paramour in a home in Westlake, Louisiana.
On August 19, 1992, the father filed another petition for divorce, this time praying for sole custody with the mother having supervised visitation. A judgment of divorce granted in April 1993 stated that the father was awarded "permanent, care, custody and control" of JM with the mother having "reasonable rights of visitation."
The mother married her paramour in December of 1996. In 1999, the mother left her husband and began living with a different man in Woodville, Texas. The mother stayed with this man from February 1999 through July 1999, caring for his daughter. She then moved to Nacogdoches, Texas with another man before coming to Shreveport in October 1999.
The father married the stepmother on March 6, 1998. The stepmother filed a petition for intrafamily adoption of JM on August 27, 1999. She amended the petition in December 1999 to add the father as a plaintiff and to further allege as a ground for adoption that the mother failed to visit, communicate or attempt to communicate with JM without just cause for a period of at least six months. The petition was further amended in April 2000.

Applicable Law
La. Ch. C. art. 1245 sets forth the criteria for when parental consent to an intrafamily adoption is unnecessary. Article 1245 was amended in 1999 by Act No. 1062, § 4, which had an effective date of January 1, 2000. Prior to this amendment, art. 1245 read:
A. The consent of a parent as required by Article 1193 may be dispensed with upon proof of the required elements of either Paragraph B, C, or D.
B. When a grandparent, aunt, or uncle has been granted custody of the child by a court of competent jurisdiction and any one of the following conditions exists:
(1) A parent has refused or failed to comply with a court order of support for a period of one year.
(2) A parent is a nonresident of this state and has failed to support the child for a period of one year after a judgment awarding custody to the grandparent, aunt, or uncle.
(3) A parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of two years.
C. When a parent is married to a stepparent petitioner and both of the following conditions exist:
(1) The parent married to the stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction.
(2) The noncustodial parent is a nonresident of this state and has failed to support the child for a period of one year after the judgment awarding custody.
D. When a parent lawfully exercising actual custody of the child is married to a stepparent petitioner and either of the following conditions exists:
(1) The other parent has refused or failed to comply with a court order of support for a period of one year.
(2) The other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of two years.
Among other things, the 1999 amendment shortened the period in subparagraph D(2) from two years to six months.

*549 Trial Court's Ruling

Granting the adoption, the trial court provided detailed reasons for judgment in its ruling. It first ruled that the evidence did not establish that the mother failed to support JM for one year as a non-resident of Louisiana. The court next interpreted La. Ch. C. art. 1245(D)(2) to require communications or contacts with the child of a "significant" nature. Most importantly for purposes of this appeal, the trial court concluded that "while the mother has not failed to make contact with the child for any specific two-year period of time, she has refused and failed to maintain significant contact with the minor child, from the perspective of this child." The trial court found that there was no "significant" visit, communication or attempt to communicate with JM from August 1992 to May 1997 and from June 1997 to September 1999. It further found that there was no just cause for the mother's failure to maintain significant contact with JM during these periods, and that the adoption was in JM's best interests.

DISCUSSION
The mother argues that the trial court erred in its interpretation of La. Ch. C. art. 1245 and in finding that a two-year period elapsed where she had refused or failed to visit, communicate, or attempt to communicate with JM as set forth in the article. In finding that significant contacts were required by art. 1245, the trial court relied on Kirby v. Albert T.J., 517 So.2d 974 (La.App. 3rd Cir.1987), writ denied, 519 So.2d 107 (La.1987) and Radke v. Fontenot, 93-1419 (La.App. 3rd Cir.5/18/94), 637 So.2d 684.
The appellate court in Kirby discussed the application of La. R.S. 9:422.1. This statute is the source of La. Ch. C. art. 1245, which was enacted upon the adoption of the Children's Code in 1991. At the time of the Kirby decision, R.S. 9:422.1 provided:
If the spouse of the petitioner is the legitimate parent of the child or if the petitioner is the grandparent or grandparents of the child, then the consent of the other legitimate parent is not necessary when the spouse of the petitioner, or the grandparent or grandparents, or the mother or the father has been granted custody of the child by a court of competent jurisdiction, and if any one of the following conditions exist:
(1) The other legitimate parent has refused or failed to comply with a court order of support for a period of one year.
(2) The other legitimate parent is a nonresident of this state and has failed to support the child for a period of one year after judgment awarding custody to the mother or father or grandparent or grandparents.
(3) The other legitimate parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of two years.
In Kirby, the natural father contested the adoption of his son by the son's stepfather. Having already determined that the natural father had failed to visit, communicate or attempt to communicate with his son from November 14, 1983 to the date of a hearing on March 27, 1986 (a period in excess of two years), the appellate court addressed the issue of just cause. After concluding that the record furnished a reasonable factual basis for the trial court's finding that the long absence of communication was due to the natural father's lack of initiative in locating his son, the Third Circuit stated:
We feel this case easily meets the requirements of the statute. We frankly are of the opinion that neither Dr. J.'s *550 letter of November 14, 1983 or his telephone call to Mrs. Hensel in November 1981 were meaningful attempts to communicate with Bert which would have rendered R.S. 9:422.1(3) inapplicable. Just as Louisiana courts have interpreted R.S. 9:422.1(1) and (2) as requiring "significant" support payments we feel that 9:422.1(3) requires more than a token attempt by a legitimate parent to communicate with his or her child. It can hardly be argued that Dr. J. made anything more than token attempts to communicate with Bert, at least for a period of some five years before the hearing of this matter.

Id., 517 So.2d at 980.
Footnote omitted.
The court in Radke, supra adopted the reasoning set forth in Kirby, supra to conclude that art. 1245(D)(2) requires "significant" contact. Dissenting in Radke, Judge Cooks wrote:
Parental right to the care, custody and management is a "fundamental liberty interest warranting great deference and [vigilant] protection under the law." This State's legislature has imposed statutorily strict procedural and evidentiary requirements which must be met before issuance of a judgment terminating parental rights.
* * * * *
Children's Code Article 1245 does not contain any language which impliedly or otherwise lends credence to the Majority's "significant contact" interpretation. On the contrary, the article clearly requires a parent's refusal to communicate or attempt to communicate for a period of two years.
We agree with Judge Cook's dissent.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. We recognize that adoption statutes are in derogation of the natural right of the parent and must be strictly construed. EMW, Jr. v. JPM, 583 So.2d 511 (La.App. 2d Cir.1991). If any ambiguity remains after the rules of statutory construction are applied, we then apply the rule of strict construction. In re C.B., 94-0755 (La.10/17/94), 643 So.2d 1251. The trial court's interpretation runs afoul of these rules as it unduly lessened the petitioner's burden of proving the mother's noncompliance with art. 1245 by requiring proof of the nonexistence of "significant contacts" between the mother and JM for a period of two years.
We are mindful that Louisiana courts have interpreted art. 1245, and its predecessor R.S. 9:422.1, to require "significant" support payments. See Haynes v. Mangham, 375 So.2d 103 (La.1979) and Anderson v. Ramer, 27,469 (La.App.2d Cir.9/27/95), 661 So.2d 584. Nonetheless, we decline to extend the standard of "significant" to visits, communications and attempts to communicate under art. 1245(D)(2).
We note that "significant" contacts are now required under La. Ch. C. art. 1015, which sets forth the grounds for involuntary termination of parental rights. That article states, in relevant part:
The grounds for termination of parental rights include:
* * * * *
(4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

*551 (a) For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child's parent continue to be unknown.
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.
* * * * *
Our emphasis.
The 1999 Comment to Art. 1245 states:
This Article has been simplified and made consistent with the parallel policies of the "abandonment" ground in a certification for adoption proceeding. See Art. 1015(4).
A review of the legislative history of Art. 1015 is clearly relevant to this discussion.
Article 1015 was amended by Act 256 of 1997. 1997 Comment (d) to this article states that the source of Subparagraph 4(c) is former Art. 1015(10). Prior to the 1997 amendment, La. Ch. C. art. 1015 stated, in part:
* * * * *
(10) Failure to maintain contact with the child
(a) The child was voluntarily placed in the physical custody of some other individual or married couple.
(b) The parent has refused or failed to visit, communicate, or attempt to communicate with the child, without just cause, for a period of two years.
The 1991 comments to art. 1015 prior to the 1997 revision stated:
k. Paragraph 10 is new. Its source is R.S. 9:422.1, which previously applied only in the case of certain intra-family adoptions.
La. R.S. 9:422.1 is also the source of La. Ch. C. art. 1245. We note that the legislature, while using R.S. 9:422.1 as the source provision for arts. 1015 and 1245 in 1991, chose to later add the "significant" language to art. 1015(4)(c) in the 1997 revision. La. Ch. C. art. 1245 has never been amended to require significant visits, communications or attempts to communicate, even when the legislature reduced in 1999 the requisite period without contact from two years to six months.
The language of Article 1245(D)(2) is clear. It was only required that the parent opposing adoption not refuse or fail to visit, communicate or attempt to communicate with the child for a period of two years. The trial court erred as a matter of law in demanding that these visits and communications must be of a significant nature.

Evidence
The party petitioning the court for adoption carries the burden of proving a parent's consent is not required under the law. In re Orgeron, 94-458 (La.App. 5th Cir.11/16/94), 646 So.2d 1137. The trial court properly required the stepmother to establish the grounds under art. 1245(D)(2) by clear and convincing evidence. See In re Dantzler, 99-0625 (La. App. 1st Cir.6/25/99), 739 So.2d 907, writ denied, 99-2228 (La.8/2/99), 747 So.2d 38.
A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. To reverse a factfinder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. *552 Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). When factual findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard of review demands great deference to the trier of fact's findings, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The trial court found the father's testimony to be credible, and recognized that it was his testimony which established the visits and communications by the mother. The mother's testimony was entirely vague about the dates of many of her alleged communications with JM. The court found that the mother first called JM around August 25, 1992. Noting that the father testified that the mother called every few months after that, the trial court found that these calls "clearly included the Fall of 1992, Spring of 1993, maybe Christmas of 1993, Summer of 1995, Christmas 1996 and Spring of 1997." Based on the father's testimony about the frequency of calls, the trial court found that on those dates that the father could not remember, that calls were "likely made during the Spring of 1994, the Fall of 1994, and the Fall of 1995." The court concluded that during the first five years after the mother left in August 1992, she telephoned JM's home a total of ten times, and actual communication with JM occurred only five times during this period. The mother sent a birthday card to JM in 1995. She never sent any other cards, Christmas gifts or letters from August 1992 to 1999.
There was no evidence of any visits between the Summer of 1992 and the Spring of 1997. During this period, the mother requested several times that JM be allowed to visit her in Lake Charles. The father refused because the mother was unmarried and living with her paramour at the time. As an alternative, the father allowed the mother to visit JM in Castor. The mother's sister and friends in Castor and nearby areas offered use of their homes for such visits. Two such visits were arranged, but both times the mother failed to appear without explanation. After the mother married her paramour in 1996, the father permitted JM to stay with her in Lake Charles. In June of 1997, JM visited her for one week in Lake Charles. The visit was originally scheduled for two weeks, but JM asked to return home after one week because the mother and her second husband were drinking, smoking, fighting and cursing.
The mother had no further contact with JM until he injured his spleen in a bicycle accident in January 1999. JM was placed in an intensive care unit at a Shreveport hospital. The mother visited with JM for short periods of time over two days during his hospital stay and even promised to remain with JM during the duration of his treatment. However, the mother was unable to fulfill this promise as her friend, who had driven her from Lake Charles, needed to return. Since learning in July 1999 of the stepmother's plans to adopt JM, the mother has had more frequent contact with JM.
The trial court found that "the mother has not failed to make contact with the child for any specific two-year period of time[.]" A reasonable factual basis exists in the record for this finding, and it is not clearly wrong. Accordingly, petitioner failed to carry her burden of proving under La. Ch. C. art. 1245(D)(2) that the mother refused or failed to visit, communicate, or attempt to communicate with JM without just cause for a period of two years. The trial court erred in granting the adoption because it applied an incorrect *553 legal standard to its correct factual findings.
Because we conclude that petitioner failed to meet her burden of proof under art. 1245, it is unnecessary for this court to discuss whether the adoption was in JM's best interest.

DECREE
At appellee's cost, the judgment granting the intrafamily adoption is REVERSED.