1 .MARION F. EDWARDS, Judge.
Appellant Yvette Guerin Bourgeois, wife of Chad J. Bourgeois, appeals the denial by the trial court of her petition for the intrafamily adoption of the child L.J.B. Chad Bourgeois was formerly married to Evelyn Benoit, and of that marriage L.J.B. was born, on November 21, 1999. When Chad and Evelyn were divorced, Chad obtained sole custody of L.J.B. Chad and Yvette married on May 31, 2003, and L.J.B. has, resided with them since that time. The Petition For Stepparent Adoption, filed in October 2003, alleged that Evelyn has failed to support, visit, communicate or attempt to communicate with, the child for a period in excess of six months. Chad consented to the adoption. Therefore, under La. Ch. C. art. 1245, Evelyn’s consent was unnecessary.
Following a hearing on the matter, the trial court determined that Evelyn’s consent was necessary and the adoption was denied.
At the hearing on January 7, 2004, Chad testified that since the divorce from Evelyn, he has been the sole custodian of L.J.B., and that she has lived with him the entire time. No one has contributed to the child’s support. Chad testified that Evelyn had substance abuse problems throughout the marriage. She was arrested for theft on September 1, 2002, and in September, 2003, she was sentenced to five years in prison at St. Gabriel. In 2002, shortly after she was incarcerated, Evelyn’s ^parents requested that Chad allow *1106 the child to visit her mother at jail, but Chad did not allow this. In early October of 2002, Evelyn wrote a letter stating, she was going to work on her problems, but Chad did not believe that she requested a visit at that time. Evelyn did not attempt to telephone or communicate in any way until November 2003, when she sent a card for L.J.B.’s birthday.
Yvette testified that she acts as a full-time mother to L.J.B. During the time she has been married to Chad, Evelyn did not attempt to contact the-child until she sent the birthday card. When she and Chad moved in together, prior to their marriage, all of Chad’s mail was forwarded, yet Yvette was not aware of any packages or mail sent to L.J.B. by Evelyn. Yvette has known Chad for several years, and they discussed everything, so she would know if there had been any communication. Yvette is acquainted with Evelyn’s mother, who visited with the child every three to six months with L.J.B.’s half-brothers from Evelyn’s previous marriage. Chad would not allow the grandmother to take L.J.B. to visit Evelyn in prison. Yvette did not know the last time Evelyn spoke with the child.
Evelyn testified that she would be on a work-release program in April of 2004, and eligible for parole in 12 months from the date of trial. She testified that at the time she and Chad were divorced, they had joint custody, until the time she was incarcerated. She last saw her child about two weeks before she was arrested, in mid-August of 2002. During that two week period, she was not in good shape and thought it was best for her daughter to be with Chad. From the time she was arrested in 2002, she has been in jail and not allowed to see L.J.B. Evelyn tried to telephone, but could not make collect calls to Chad’s phone, because there is an MCI telecom block. Evelyn did not know if the block originated from prison, and she could not make a three-way call. She spoke with L.J.B. on Valentine’s Day of |42003, when the child was at her sister’s house, where there was no call block. In June, the child was again at her sister’s, but the telephone lines at jail were down.
Evelyn has begged her mother to bring the child, but Chad would not allow it. She made a purse for L.J.B. and sent it through her mother, but her mother has not been able to visit with the child. After her sentencing, Chad did not allow Evelyn’s mother to see L.J.B. at all, because he was afraid she would bring the child to see her in prison. Evelyn has sent cards for Christmas, Valentine’s Day, Easter, and birthdays to the address where Chad had lived, and did not know that he had moved. She did not know his address until he married Yvette. Evelyn mailed things to her mother because she felt L.J.B. was not getting them. She has done everything in her power to see her daughter.
In late 2002 and early 2003, Evelyn inquired about filing for visitation rights, but at that time, she believed she would be on a work-release program. After she was sentenced to jail, in October 2003 she filed a rule for visitation in Ascension Parish where the original divorce and custody decree were granted. The rule included grandparent visitation, and was heard three weeks before the current trial. Two visitation dates were set up with Evelyn’s parents, but on both occasions, there was a schedule conflict.
Linda Benoit, Evelyn’s mother, testified that Chad refused to let her take L.J.B. to visit Evelyn in prison. He allowed Mrs. Benoit to take L.J.B. when she promised she would not visit with Evelyn. Every time Mrs. Benoit would see the child, she asked Chad if he had changed his mind about Evelyn, and he did not. She saw *1107 L.J.B. at Christmas of 2002, then at Valentine’s Day, and in the spring. On Valentine’s Day, L.J.B. spoke with Evelyn on the telephone. In August 2003, after Evelyn was sentenced, Chad refused to let Mrs. Benoit have L.J.B. because he feared she would take the child to visit her mother. In July, 2003, Evelyn sent a |spurse for her daughter, with a card, but Mrs. Benoit has been unable to see the child since that time. Chad had told Mrs. Be-noit that he wanted Evelyn “off the face of this Earth,” but did not tell her that L.J.B. could not speak with Evelyn or could not send cards.
Mrs. Benoit produced letters sent by Evelyn in which she discusses L.J.B. remembering her as her mother. The letters also express concern that Evelyn could not visit with L.J.B., and Evelyn’s interest in filing for visitation rights. Evelyn calls her several times a week to inquire about her children. Mrs. Benoit did not discuss the letters with Chad.
Mr. James Benoit is Evelyn’s father. He testified that every time he talked with Evelyn, she asked to see her daughter, but that Chad had requested no visitation. Since she has been in jail, Evelyn’s sons have been able to visit her every three months. Evelyn asked Mrs. Benoit to purchase cards on several occasions, and to send them to L.J.B. on her behalf.
When the hearing was completed, the trial court made the following findings of fact. Sometime in September of 2002, Evelyn and her parents contacted Chad, but he refused their requests for visitation, and he continued to do so. The court also found that Evelyn attempted to phone Chad in an effort to speak with her daughter, and could not do so because the line was blocked. From September, 2002, until June, 2003, Evelyn sent cards to her daughter. After June 2003, Evelyn sent cards to her mother to be given to L.J.B. On October 14, 2003, Evelyn filed a rule for visitation in the 23rd Judicial District Court, and that she had visited with her sons on multiple occasions.
Applying these findings of fact, the- court determined that Yvette had the burden of proving that Evelyn failed to communicate or attempt to communicate with L.J.B. for at least six months without just cause, and that she did not meet her | ^burden of proof. The court held that Evelyn had attempted to communicate with her daughter through the telephone calls to Chad’s home, through cards mailed, and through her parents, and that Evelyn had made an effort to facilitate visitation. The court specifically made a credibility call in favor of ,'Evelyn: “Mrs. Bourgeois, I believe you.” The court continued, finding that there was no possible way she could have attempted to support her daughter. Thus, the court found that under Children’s Code article 1245, the adoption could thus not proceed without Evelyn’s consent.
The trial court granted a new trial on the issue of whether or not the adoption is in the best interest of the child. On writs taken to this Court, we set aside the new trial.[1] Yvette appeals the judgment denying adoption.
According to La. Ch.C. art. 1193, if parental rights have not been terminated, consent of the mother of the child is required in an adoption proceeding. Under La. Ch.C. art. 1245, when the spouse of a stepparent petitioner has been granted sole or joint custody of the child, the parental consent required by article 1193 may be dispensed with if the other parent has refused or failed to comply with a court order of support without just cause for a period of at least six months, or if the *1108 other parent has refused or failed to visit, communicate, .or attempt to communicate with the child without just cause for a period of at least six months.
The party petitioning the court for adoption carries the burden of proving a parent’s consent is not required under the law.[2] The burden of proof under Ch.C.1 art. 1245 is clear and convincing evidence.[3] To prove a matter by clear and ^convincing evidence means to demonstrate that the existence of a disputed fact is highly probable; that is, much more probable than its nonexistence.[4]
Yvette urges that the trial court committed manifest error in ruling that Evelyn attempted contact with L.J.B. for a six-month period prior to the filing for adoption, contending that the only .evidence proffered by Evelyn was contradictory and self-serving. For example, Yvette points to Evelyn’s testimony that there was a block on Chad’s phone, and that she could not make collect calls to his residence from prison. According to Yvette, there was no such block. Further, Yvette avers that there was no evidence other than Evelyn’s statement that the telephone lines at prison were down on the June day she tried to call her daughter.
Yvette points out several alleged inconsistencies in Evelyn’s testimony. However, the trial court made specific findings of fact and a specific credibility evaluation. When factual findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard of review demands great deference to the trier of fact’s findings, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.[5] We do not perceive contradiction or inconsistency in the testimony of either Evelyn or her mother, and we find no reason to overturn the credibility finding.
Chad avers that the Christmas and birthday cards sent in November and December of 2003 were mailed after the petition for adoption was filed, and, thus cannot be considered. He further urges that the finding by the court that Evelyn sent holiday cards from September 2002 through June 2003, is erroneous. According to Chad, Easter of 2003 was on April 20, and the petition was filed on | sOctober 27, over six months later. However, the testimony is clear that Evelyn sent a card and a purse, through Mrs. Benoit, in July 2003.
It is apparent that Chad, in a well-intentioned effort to care for his daughter, forbade her to visit her mother in prison. Nevertheless, his adamant refusal to participate in maternal visitation appears to have resulted in a broad impediment to Evelyn’s ability to stay in touch with her child. Taken together with the fact that Evelyn is in prison, and in view of L.J.B.’s tender age, Evelyn had to rely on her parents to attempt to establish contact. In addition, Evelyn filed a motion for visitation shortly before the present petition for ádoption was filed. Considering all the facts of this case, we agree with the trial court that Yvette has failed to carry her *1109 burden of proving that Evelyn refused or failed to communicate with L.J.B., so as to render her consent to an adoption unnecessary under Ch. C. art. 1245.
For the foregoing reasons, the judgment is affirmed. Costs are assessed to appellant.

AFFIRMED.

. See In RE: Y.G.B. applying for adoption of L.J.B., 04-C-652 (6/22/04).

. In re Orgeron, 94-458 (La.App. 5th; Cir. 11/16/94), 646 So.2d 1137; In re Dantzler, 99-0625 (La.App. 1st Cir.6/25/99), 739 So.2d 907, writ denied, 99-2228 (La.8/2/99), 747 So.2d 38.

. In re Dantzler, supra; Myers v. Myrick, 34,970 (La.App. 2 Cir. 5/17/01), 787 So.2d 546.

. Boone v. Mid-State Marketing, 2003-1032 (La.App. 3 Cir. 3/3/04), 867 So.2d 91, writ denied 2004-0878 (La.6/25/04), 876 So.2d 833.

. See e.g., Myers v. Myrick, supra.