GREG G. GUIDRY, Judge.
|2The biological mother (MRC)[1] of the minor child (CJM, Jr.) appeals from the juvenile court judgment granting the intra-family adoption of CJM, Jr. by his stepmother/petitioner (BEM). For the reasons which follow, we affirm.
The petitioner in this intrafamily adoption case, the stepmother of CJM, Jr., is married to CJM, Sr. CJM, Sr. and MRC were previously married, and CJM, Jr. was born of this union on December 17, 1996. CJM, Sr. and MRC were divorced by judgment dated July 23, 1999. On that same date the parties consented to joint custody of CJM, Jr., with MRC originally named domiciliary parent. CJM, Sr. and BEM began living together shortly thereafter in 1999. In 2001, while continually struggling to care for CJM, Jr., MRC granted domiciliary custody to CJM, Sr. In 2002, MRC regained domiciliary custody. Having difficulty again, MRC asked CJM, Sr. and BEM to allow CJM, Jr. to live with them. On October 23, 2004, BEM and CJM, Sr. were married. Finally, on December 13, 2004, on the motion of | SCJM, Sr., the custody judgment was again modified, granting sole custody of CJM, Jr. to his father and supervised visitation to MRC. The judgment specified that if the parties failed to agree on a supervisor, the supervisor must be a licensed professional, to be paid by MRC. For approximately ten months thereafter, CJM, Sr. allowed MRC’s mother to supervise visits. However, in November 2005, following a problem with MRC being late to pick up the child and threatening to tell CJM, Jr. negative things about his father and BEM, CJM, Sr. notified MRC that he no longer agreed to allow her mother to supervise the visits. He requested that the supervisor be a licensed professional. MRC’s visits with CJM, Jr. ceased at that point. There was testimony that regardless of who had domiciliary custody of CJM, Jr., he has lived primarily with his stepmother and father since 1999.
On August 11, 2006, BEM filed the instant petition for the intrafamily adoption of her 10 year old stepson, CJM, Jr. CJM, Sr. executed an authentic act of consent that was filed with the petition. Thereafter, in September 2006, MRC filed a motion for unsupervised visitation in an ongoing proceeding in the Twenty-Fourth Judicial District Court for the Parish of Jefferson where other custody and visitation matters concerning CJM, Jr. had been litigated. On October 19, 2006, MRC filed an opposition in proper person to the adoption of her son, CJM, Jr. Following a hearing in which neither the child nor MRC were represented by counsel,[2] the *501 juvenile court granted BEM’s request to adopt CJM, Jr., terminating MRC’s parental rights to her son. It is from this judgment MRC appeals.
|4It is well settled that the party petitioning the court for adoption carries the burden of proving a parent’s consent is not required under the law. In re Bourgeois, 04-1466 (La.App. 5th Cir.4/26/05), 902 So.2d 1104. The burden of proof for the person seeking to adopt under such circumstances is clear and convincing evidence. In re Bourgeois, supra, at 1108. Additionally, even if the technical requirements for dispensing with the natural parent’s consent are met, the primary consideration in adoption proceedings is whether the adoption is in the best interest of the child. In re Miller, 95-1052 (La. App 1st Cir. 12/15/95), 665 So.2d 774, writ denied, 96-0166 (La.2/9/96), 667 So.2d 541. When the court has granted custody to the child’s parent, married to the stepparent petitioner, there is a rebuttable presumption that the adoption is in the best interest of the child. La. Ch.C. art. 1255(B). The trial judge is vested with great discretion in determining whether an adoption is in the best interest of the child and each case must be decided on its own facts. In re Farrar, 635 So.2d 674 (La.App. 3rd Cir.1994); In re EWB, 441 So.2d 478 (La. App. 2nd Cir.1983). The trial court’s discretion is not absolute and a determination of best interest is subject to reversal if the record reveals manifest error in the determination. Farrar, supra; EWB, supra.
In this case, the mother of the child, MRC, opposed the adoption. Thus, it was incumbent upon the petitioner to show by clear and convincing evidence that MRC’s consent was not necessary.
La. Ch.C. art. 1245, dispensing with the necessity of parental consent to an adoption under specified circumstances, provides in pertinent part:
A. The consent of the parent as required by Article 1193 may be dispensed with upon proof of the required elements of either Paragraph B or C of this Article.
[[Image here]]
|SC. When the spouse of a stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction or is otherwise exercising lawful custody of the child and any one of the following conditions exists:
(1) The other parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.
(2) The other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.
Following a hearing, the juvenile court judge found that both conditions, dispensing with the need for MRC’s consent, had been adequately proven. MRC disputes those findings on appeal. MRC argues that her failure to comply with the court order of support was with just cause and the record contradicts the finding that she did not communicate with her son for a six month period.
*502 MRC was under a court order to pay child support. The record shows that MRC’s last payment of child support, before the filing of the adoption petition, was May 2005. Once it is shown that a parent did not comply with the court order of support, the burden shifts to the parent to prove by a preponderance of the evidence that he or she had just cause for the failure to support the child. State in the Interest of M.L. and P.L., 95-0045 (La.9/5/95), 660 So.2d 830. Just cause is an affirmative defense and the parent bears the burden of proving that he/she had just cause for not paying child support or that the failure to pay child support resulted from circumstances out of his/her control. In re Sevin, 97-1145 (La.App 5th 5/13/98), 712 So.2d 998.
MRC argues that she had just cause for failing to comply with the support order and/or the failure was beyond her control. It is not disputed that MRC’s residence and all her belongings were destroyed by Hurricane Katrina. She argues that, in the past 18 month period following that devastation, she has had difficulty | ^finding and maintaining a place to live as well as caring for the basic needs of herself and her other child, a four year old daughter. Further, her lack of a permanent residence has made it difficult to find and keep a job.
In finding that MRC did not meet her burden of proving by a preponderance of the evidence that she had just cause for failing to pay any child support for 15 months, the juvenile court noted that MRC’s child support obligation, $64.00 per month, was minimal. Yet, MRC failed to make any payments for the three months prior to the hurricane and, even though she suffered a great loss due to the hurricane, she failed to make even a small payment for twelve months thereafter. The court also noted that MRC received $9500 from the Federal Emergency Management Agency (FEMA) in October of 2005 and that she did not forward any of that money to CJM, Sr. and BEM for the support of CJM, Jr.
MRC admits that she did not send any of the FEMA money to CJM, Sr. and BEM for support. She testified that after losing her residence and all her belongings in the hurricane, she needed the money to find housing, and get clothing and food for herself and her daughter. MRC also testified that she sent $2500 to two attorneys to assist her in getting visitation with CJM, Jr. following CJM, Sr.’s refusal to let her see him without a licensed supervisor, which she could not find or afford. In finding MRC lacked just cause for failing to pay her ordered child support, the juvenile court judge noted that it was disputable whether the $2500.00 payment to an attorney was for past services rather than future services. MRC filed her opposition to the adoption in proper person and was without counsel at the hearing.
It was recently noted by this Court in In re A.G.T., 06-0805 (La.App. 5th Cir 3/13/07), 956 So.2d 641, that the devastating effects of the hurricane were severe enough to prompt three Executive Orders by the Governor, extending prescriptive 17periods, and a Legislative Act, extending for one year the time within which insurance claims could be filed. However, we held, in A.G.T., that the executive orders suspending prescriptive periods did not serve to suspend the natural father’s obligation to support his child, thereby preventing the application of La. Ch.C. art. 1245(C)(1). In accord, we find that, while MRC was seriously impacted by the hurricane, it did not provide “just cause” for her failure to make any support payments for 15 months. Thus, we find no error in the finding by the juvenile court judge that MRC failed to comply with a court order of support without just cause for a period of at least six months.
*503 Since only one of the conditions of La. Ch.C. art. 1245(C) needs to be proven to dispense with the consent of a parent to an intrafamily adoption, and we have found the juvenile court was correct in finding that MRC failed to comply with a court order of support without just cause for a period of at least six months, further review of the findings regarding the second condition is unnecessary.
As noted by the juvenile court in the reasons for judgment, even if it is determined, as here, that the biological parent’s consent to the adoption is unnecessary, the court must still consider whether the adoption is in the best interest of the child. In making this determination, the court, in its written reasons stated: “It is clear to this Court from the evidence and testimony presented at the hearing on November 6, 2006, that the intrafamily adoption of C.J.M. Jr. by his stepmother is in the minor’s best interest.” The court provided lengthy reasons supporting that conclusion, and we find them amply supported by the record.
Following the divorce in 1999, CJM, Jr. has had an unstable life with MRC. She was initially granted domiciliary custody of the child but within a few months he was residing with his father. At this time, MRC had a serious drug problem. The court noted that sometimes MRC would fail to pick up CJM, Jr. from after-care | sand, with CJM, Sr. working, BEM would have to go and get him. Days would pass before MRC would even call to check on CJM, Jr. Two years later, in 2001, CJM, Sr., after marrying BEM, was granted, by consent, domiciliary custody. The following year, CJM, Sr. allowed MRC to regain domiciliary custody but within six months she returned CJM, Jr. to his father and BEM.
At this point, CJM, Sr. petitioned the court for custody and requested an evaluation. It was determined that MRC was still engaged in drug use. Although CJM, Sr. also admitted a past drug dependence problem, the evaluator concluded that permanence as a family unit was superior with CJM, Sr. and BEM. Further, there was evidence that MRC was disruptive to the child’s stability by telling him negative things about his father and BEM and telling CJM, Jr. that he was going to come live with her soon. This upset the child and caused him to act out at school. Finally, the court found that BEM was the most stable adult in the child’s life for over the past seven years.
Moreover, under La. Ch.C. art. 1255(B), although rebuttable, the adoption is presumed to be in the best interest of the child. Thus, upon review we find that the record supports the juvenile court finding that the adoption is in the best interest of the child.
MRC argues that the finding that the adoption is in the best interest of CJM, Jr. was inconsistent with other findings of the juvenile court and for that reason should be reversed. In support of this argument, she refers to oral reasons for judgment by the court in which it was noted:
I considered the fact that C[JM, Jr.], does have relationships with both of these families, [BEM]’s family and, of course, his biological family with his Mother. I do appreciate the testimony that he is very close to his sister J., and I take into account that he has a half sister. I also take into account that he is probably very close to his Maternal Grandmother, ..., who testified here today, Rand I have absolutely no doubt that this child is loved tremendously by the mother’s family and by the mother. .... It is the hope of this Court, and [BEM], I hope you listen carefully to this, that you will allow, ... this child to maintain contact with his maternal family. He clearly knows them, he loves *504 them, I think it is in his best interest that he maintains a relationship with them,....
MRC argues that BEM’s plan to relocate CJM, Jr. to Alabama, as provided in the adoption petition, was inconsistent with these instructions by the juvenile court judge.
We find no inconsistency in those remarks requiring reversal of the judgment granting the adoption. The juvenile court judge was merely pointing out the obvious, that a relationship between the child and his mother is important. She was encouraging BEM to allow CJM, Jr. to pursue that relationship if he chose to do so and to facilitate it, while at the same time recognizing that it was still in the child’s best interest to grant the intrafamily adoption. We find that the remarks by the juvenile court judge were not inconsistent with her ruling but were offered as encouragement that the adults involved in CJM, Jr.’s life act in his best interest.
Accordingly, for the reasons stated above, we affirm the judgment of the juvenile court granting the intrafamily adoption of CJM, Jr. by BEM.

AFFIRMED.

. Pursuant to Rules 5-1 and 5-2 of the Uniform Rules-Courts of Appeal, the initials of the parties involved will be used to protect the minor's identity.

. MRC argues that it was error for the juvenile court to not appoint an attorney to represent her or CJM, Jr. in these proceedings. While the proceedings are tilled '‘Intrafamily Adoption,” the parent opposing the adoption has his/her parental rights terminated as a result of the adoption. The Children’s Code does not, however, grant the opposing parent or child a right to counsel in intrafamily adoption cases. The United States Supreme Court has not mandated counsel in such *501 cases. Lassiter v. Department of Soc. Servs., 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Thus, despite the fact that it has been noted that "[tjhroughout the Children's Code, independent counsel is typically required for the child in disputed cases,” Lucy S. McGough & Kerry Triche, Louisiana Children’s Code Handbook 2006, Authors’ Notes, at 649, we find mandating counsel in intra-family adoption cases is a legislative function. The lack of counsel does not constitute reversible error in this case.