LOLLEY, J.
 

 h Tonya Jane Phelps Barlow appeals the Final Decree of Adoption by the 6th Judicial District Court, Parish of Tensas, State of Louisiana, which terminated her parental rights and allowed the final adoption of the minor child, L.M.S. by John David Spillars and Ashley Lyndyn Spillars. For the following reasons, the trial court’s judgment is affirmed.
 

 Facts
 

 L.M.S. was born to Tonya Phelps (now Barlow) on February 16, 1998. Although Frank Jacob Fitt, Jr. was listed on the child’s birth certificate as the legal father, DNA testing later proved John David Spil-lars to be the biological father. The child’s surname was originally Fitt; however, after John David successfully established his paternity, her surname was changed Spil-lars. Fitt never communicated with the minor child and has no real interest in this matter.
 

 In February 1999, John David filed a joint custody petition requesting to be designated the primary domiciliary parent with limited visitation to Tonya. In April 1999, Tonya and John David were awarded joint custody of L.M.S., with each party receiving alternating two-week custody. John David worked offshore and worked a schedule of two weeks on, two weeks off. The Consent Judgment ordered that John David’s two-week custody would take place when he was home from work; however, as the evidence at trial showed, Tonya rarely, if ever, exercised her two-week custody. It became the norm that during her two weeks, L.M.S. at first stayed with John David’s mother, and later, she stayed with Ashley.
 

 |2In 2003, John David began living with Ashley. Their son was born in June 2004, and they were married in April 2005. In
 
 *595
 
 2007, John David and Ashley filed their Petition for Intrafamily Adoption, alleging the following:
 

 • John had exercised primary physical custody of L.M.S. for approximately the past seven and one-half years;
 

 • L.M.S. had lived in John’s home since 1999 and in the home of John and Ashley since 2003;
 

 • Tonya, L.M.S. biological mother, had failed to visit, communicate or attempt to communicate with the child since June 2004; and,
 

 • It was in L.M.S. best interest to be adopted by Ashley.
 

 At a hearing on the matter, the trial court heard testimony from various witnesses, and ultimately determined that the adoption by Ashley was in the child’s best interest and did not require Tonya’s consent. Tonya’s parental rights to her child were terminated, and she appeals the trial court’s judgment.
 

 Discussion
 

 On appeal, Tonya raises three assignments of error. First, she argues that the trial court erred (1) in its finding that she had not attempted communication with L.M.S. within six months before the petition for adoption was filed, and (2) in terminating her parental rights. According to Tonya, the record contains uncontradict-ed testimony that she contacted the Ten-sas Parish Sheriff for assistance in enforcing her visitation rights. She states that she visited five attorneys and finally hired one to help her enforce her visitation rights. Tonya argues that this action constitutes a successful attempt on her part to communicate with her child. Furthermore, Tonya Instates that she attempted to communicate with L.M.S., but that Ashley and John prevented that communication. We disagree.
 

 According to La. Ch. C. art. 1193, if parental rights have not been terminated, consent of the mother of the child is required in an adoption proceeding. Under La. Ch. C. art. 1245, when the spouse of a stepparent petitioner has been granted sole or joint custody of the child, the parental consent required by article 1193 may be dispensed with if the other parent has refused or failed to comply with a court order of support without just cause for a period of at least six months, or if the other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.
 
 [1]
 

 The party petitioning the court for adoption carries the burden of proving a parent’s consent is not required under the law. The burden of proof under Ch. C. art. 1245 is clear and convincing evidence.
 
 Myers v. Myrick,
 
 34,970 (La.App. 2d Cir.05/17/01), 787 So.2d 546. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable; that is, much more probable than its nonexistence.
 

 A court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. To reverse a factfinder’s determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong.
 
 Stobart v. State
 
 through
 
 Dept. of Transp. and Development,
 
 617 So.2d 880 (La.1993). When factual findings are based on determinations regarding the credibility of wit
 
 *596
 
 nesses, the manifest error-clearly
 
 wrong
 
 standard of review demands great deference to the trier of fact’s findings, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
 
 Rosell v. ESCO,
 
 549 So.2d 840 (La.1989).
 

 Here, Tonya argues that she made attempts to communicate with L.M.S. Although relied upon by Tonya, we do not believe
 
 Myers
 
 to be applicable to these particular facts. In
 
 Myers,
 
 it was concluded that the trial court erred as a matter of law in demanding that the parent’s visits and communications required in art. 1245(D)(2) must be of a “significant” nature, when in fact the language of the article only requires that the parent opposing adoption not refuse or fail to visit, communicate or attempt to communicate with the child for a period of two years. Here, despite Tonya’s claims to the contrary, we feel that her actions fail to achieve the level of
 
 any
 
 attempt to communicate, be it significant or insignificant, with her child.
 

 Our review of the record finds no error with the trial court’s ultimate conclusion. Initially, we note that Tonya points to three actions taken by her which she claims indicate her attempts at communication with her child:
 

 • visits to the Tensas Parish sheriffs office to enforce her visitation rights;
 

 • attempts to hire an attorney to enforce her visitation rights; and
 

 • telephone calls to John David’s mother, Helen Spillars.
 

 |fiThe trial court addressed these specifically in its reasons for judgment. As to Tonya’s claims that she made attempts to seek help from the sheriffs office and sought the advice of attorneys, the trial court noted that she failed to give any specific time frame in which she took these actions. The trial court considered that those actions constituted efforts to enforce her legal rights, but did not rise to the level of an attempt at communication with her child. Notably, no one from the sheriffs office or the attorneys’ offices appeared at trial to substantiate Tonya’s claim. As to the telephone calls to John David’s mother, Helen, Tonya testified that she called Helen weekly in an attempt to communicate with L.M.S.; however, Helen testified that Tonya called roughly only twice a year between the summers of 2004 and 2007 (when the petition was filed). The trial court specifically stated that it found Helen’s testimony “consistent with the entire case” and Tonya’s overall testimony not to be credible. This determination by the trial court does not appear to be clearly wrong, and clearly was within the province of the factfinder.
 

 We next consider Tonya’s claims that she was somehow prevented from communicating with L.M.S., because she was secreted away by John David and Ashley. Notably, John David and Ashley lived with L.M.S. in a very small community that closely neighbored Tonya’s. Whereas Tonya claimed she did not know where John David lived and that Ashley concealed their telephone numbers and address, the testimony at trial does not support her assertions. Although Tonya stated she did not know John David and Ashley’s telephone number, there was evidence at trial that it was in the phone book and that Tonya had
 
 John
 
 David’s cell phone number 1 fiwhich had not changed since 2003. In fact, despite Tonya’s assertions that John David and Ashley were hiding L.M.S. from her, John David testified that he never made an effort to conceal his whereabouts from Tonya, and that his P.O. box number had not changed since 2003. Surely, if he had wanted to hide the child, it would not
 
 *597
 
 have been in a community with a rough population of 1000 people where he and Ashley were obviously known.
 

 The trial court found it “disturbing” that Tonya never made an attempt to send L.M.S. a gift, a card or a letter. We agree. Additionally, despite the fact that Tonya had a court order giving her joint custody of L.M.S., she never attempted to exercise those rights in terms of visitation or in any way a parent might exercise their rights. For instance, despite the fact she knew where L.M.S. attended school, Tonya never attempted to attend a school function or communicate with L.M.S. teachers about her progress in school.
 

 As stated, this is not a case of judging the level of attempts at communication— this is a case of whether
 
 any
 
 attempts at communication with the child occurred. Here there were none. Simply put, the record shows that between the summer of 2004 until the time the petition was filed in August 2007, Tonya made no attempts to communicate with her child. Furthermore, there is no just cause that prevented Tonya from communicating or attempting to communicate with L.M.S. We do not take lightly the nature of this case. Certainly, we understand that in some 17situations, a parent might face dire circumstances preventing communication or even attempts at communication; however, that was not shown to be the case here.
 

 Moreover, we note that article 1295 sets forth a fairly minimal standard for a parent in cases of this ilk. The article does not require the parent to love, nurture, care for, advise, or protect their child. No — the article only requires the parent to attempt mere communication with his or her child, a pretty low threshold in terms of being a parent. A simple attempt at communication with L.M.S. over the required period would have prevented Tonya from losing her parental rights — not much of an expectation for a parent to fulfill. John David and Ashley clearly proved that Tonya did not do so and that Ashley is entitled to adopt L.M.S. without Tonya’s consent. Further, it is apparent from this record that L.M.S. best interest is clearly served by allowing the adoption. So considering, as unfortunate as it might appear for Tonya, the trial court did not err in allowing Ashley’s adoption of L.M.S. and the termination of Tonya’s parental rights.
 

 In her second assignment of error, Tonya argues that the trial court erred in its determination of L.M.S. best interest and in failing to order psychological evaluation of the parties. It is evident from the discussion herein, that the trial court did not err in its finding that the adoption was in L.M.S. best interest. Tonya raises the young age of Ashley, the age disparity between John David and Ashley, and the number of marriages of John David as reasons tending to show that the adoption is not in L.M.S. best interest. The trial court considered those factors, which, when weighed against Tonya’s ambivalence to parent her child, it is not difficult to agree |sthat the adoption is in this particular child’s best interest. Further, we know of no requirement imposed on the trial court to obtain psychological evaluations for such a case, and we see no abuse of discretion in failing to obtain such here.
 

 Finally, Tonya argues that the trial court erred by failing to appoint a qualified, independent attorney to represent the child pursuant to La. Ch. C. art. 1245.1(B). Tonya concedes that this particular Children’s Code article was not enacted until the 2008 Louisiana Legislative Session; however, she argues that, nevertheless, L.M.S. due process rights were deprived and it was fatal error for the trial court not to have appointed her independent counsel. We disagree. The referenced
 
 *598
 
 article was not approved in final form until July 2008, well after the April 2008 trial on this matter. Surely the trial court cannot be expected to apply prospectively an article that had not even been formally enacted at the time of the trial. Accordingly, we conclude that this assignment of error is without merit.
 

 Conclusion
 

 For the foregoing reasons, the trial court’s judgment allowing the adoption of L.M.S. by Ashley Spillars and terminating the parental rights of Tonya Phelps Barlow is affirmed. All costs of this appeal are assessed to Tonya Phelps Barlow.
 

 AFFIRMED.
 

 [1]
 

 . Pursuant to an April 27, 1999 Consent Judgment, John David had joint custody with Tonya.